*111 OPINION of the Court, by
Judge Logan.'
This is a Suit in chancery, in which Chiles, who was the com-plainanf below, alleges the superior right to land for which the appellants hold the legal title under elder adversary patents. ■
As it is a settled rule in chancery, that the complainant must rely for success on the legality and strength of his own claim, we are, under the authority of this rule, led to an examination of objections which have been urged against the legality of his claim in contest, as proper points tor determination previous to the investí-
gation of his entry and the manner of surveying it. It is objected, that the entry was not surveyed within the period prescribed by law, and that the right had, therefore, become extinct and toid.
*112 ⅝⅞0 facts'of the case require a fhiriate eiamlnatiori Sf the point. The entry was míaejé in the year-1783, fot land in the then boundaries of Fayette county. The claitóánt resided at that time in said county, where he continued to reside until 1795; when he removed Without the bounds of what them formed Fayette, but'&Uftit in 1783 constituted a part of said comity.
In the year 1785 Fayette county was divided, to coiri-tóencé from the 1st of May 1786, and the land in qifeS-" tióri fell within the! limits oí Bourbon, the néwv county.
From these facts the question is presented, whether' ⅜ survey made on said efitry, in the year 1809, after the time of surveying in general had expired, was authoris-ed by law ? ’ . J
By the act of 1779, establishing a land office, (l'Litt. 41Ó) itis provided, that '<< every surveyor shall, át thé timé of making entiles, for persons tiftt' being 'inhabitants of his county, appoint a time for surveying their land, arid give notice thereof in writing to the persons making thesame.”
And in the next page it. dédareá that ‘« every chief Surveyor sjialí proceed with all practicable dispatch' t«> survey ail land’s entered for in his Officé, and shall/ if thé party live within his county, cither give him personal noticé of the time at which he will attend to make such survey, or shall publish such noticé by fixing an advertisement thereof on the door of the court-house of the county on two several dourt days; which time so appointed shall be at least one' month after personal notice given, or after the second advertisement so published f and if the surveyor shall accordingly attend, and the party, or some one for him, shall fail to appear at the timé With proper chain carriers, and a person to mark ⅛⅛ lines if necessary, his entry shall become vóid, and the land thereafter subject to the entry of any other person.’*
In either case it was the duty of the surveyor to fix the time of surveying the entry. Where the claimant Was not an inhabitant of the county in which the land, lay, the surveyor was required, at the time of making the entry, to appoint the timé for surveying it j and If tlie claimant lived within the same county, it was only required, of the surveyor to give a personal noticé to hitó, or to advertise on the door of the court-house as before mentioned, the time he would proceed to execute the survey. >
*113 It would folldw from tiicse premises, that the surveyor hot having* appointed the time and given the necessary notice for surveying an entry, no forfeiture could accrue of the l ight of the claimant for failing to attend the surveyor, which was only necessary after being notified by the surveyor as aforesaid.
But by an act of assembly passed in 1784, all entries which had been previously made on the western waters, except those for military services, were required to be surveyed and the surveys returned on or before the first day of February 1786 ; and all entries made thereafter, were directed tobé surveyed and returned agreeably to law within one year after the date of the entry, or on failure thereof it should be lawful for any person to locate said land as if such prior entry had not been made.
This act did not require a notice from the surveyor of the time he would proceed to survey the entry ; but requires of the proprietors to have their entries surveyed.
This law was repealed by an act of 1785, which pro. vided 44 that immediately after the first day of January 1787, the principal surveyor of every county on the western waters shall, and he is hereby required to give notice to all persons claiming land by entry within his county, or to their agents, See. either personally or by affixing the same at the court-house door or other usual place of holding the courts of the said county, on two several court days, that he will proceed by himself or one of his deputies to survey the lands therein mentioned on a certain day which he shall appoint, which day so appointed shall be one month at least after the notice given or last time of advertising the same.”
44 And if any person, or his agent or attorney as aforesaid, shall fail or neglect to attend the surveyor with chain carriers and a person to mark the lines as required by law, on the day appointed for that purpose, such entry shall become void, and the lands liable to be again entered by any perssn holding a land warrant.”
“ And the owners of entries already made,-shall, on or before the said first day of January, appoint some person within the county where the lands lie, their agent or attorney, who shall give notice of such appointment to the surveyor within one month thereafter, or on failure thereof his entry shall become void.”
The time for performing the requisitions of this act, was, by acts of the *114 tó the first of January 1796. This act did not limit the time of surveying. It was only directory to the surveyors of counties to give notice and proceed to execute surveys as therein required, and created the forfeiture of rigid against such as should fail or neglect to attend the surveyors as directed by the act. But until the surveyor had given notice as required bylaw, claimants within his county, or who had agents appointed therein agreeably to the requisitions of the said act, were not made subject to its penalty : for they became liable only upon failing to comply after notice had been given. The first act, as to them, was on the part of the surveyor notice when he would proceed to survey.
But with respect to claimants of entries who did not reside within the counties in which their lands lay, this law required that they should appoint some person within the county as their agent or attorney, by the first day of January 1787, and give notice thereof to the survey- or, or on failure to do so his entry should become void.
Here the first act to be performed was by the claimant; he was to appoint his agent and give notice thereof to the surveyor, and on failing to do so his entry should become void. But the effect of this law was suspended from time to time by legislative provision, in giving further time to comply with its requisitions, up to the first day of January 1796. And by acts of the legislature passed in 1795 and 1797, the further time for surveying entries was given to the last day of September 1798.
Rad these two Iasi acts operated as a limitation of the right to survey entries, the distinction between inhabitants of the counties in which entries lay, and claimants residing out of such counties, would never have existed, giving to one the right to survey, and denying it to the other. But the legislature no doubt acted under the impression that the time for surveying all entries, except such only as were expressly excepted, would expire by the first of January 1796 : for instead of restricting or limiting the right to survey, they extended it by giving further time up to September 1798.
The act of 1785 prescribed no limitation for surveying. It only limited the time, for appointing agents in the counties where the lands lay. That time was prolonged by subsequent acts to the first of January 1796, when the right to appoint such agents expired. And, *115 therefore, from that period the act was left to operate upon all entries whose owners did not reside in the county where the lands lay, and who had failed to appoint agents as required by law.
Rut by acts of 1795 and 1797, giving further time to the owners of entries to survey, the act of 1785 was sus-pendedlo the last of September 1798. From that time it has operated upon the entries of those who had failed to comply with its requisitions.
We come now to test the case before us by the provisions of that act.
Masterson, the owner of the entry in question, resided in Fayette county until 1795, and the land lay in Bour-bonr county from the 1st of May 1786.
It will he recollected that the law required that from and after the first day of January 1787, the surveyor of every county should give notice to all persons claiming land by entry within nis county, or their agents, of the. time he would proceed to execute their surveys. And the owners of entries were required to appoint some person within the county where the lands lay as their agent or attorney, on or before the said first day of January 1787, whose duty it was to give notice of such appointment to the surveyor within one month thereafter.
The first question which necessarily arises is, whether it was incumbent on Masterson, when residing in the county where the land lay, to appoint an agent and give notice to the surveyor as required by the law ?
The act taken literally, made no distinction between persons residing in and Without the county in which the land lay. It in general terms required “ the owners of entries’’ to appoint an agent in the county where the lands lay. Now although it might seem unnecessary apd absurd, as was said in the case of Sympson vs. the Register, (Pr. Dec. 259) to require of the owner of an entry to appoint an agent in the county in which he resided himself, yet when it is considered that the- law moreover required that notice of said appointment, should be given to the surveyor of the county, in order that he might know who to notify, as the agent of such claim, when to attend with chain carriers and a marker to the execution of the survey, there ⅛ great room to doubt whether notice to the surveyor that the ow ner of the entry resided in the county where the land lay, was not indispensable; for unless the surveyor shall he pre- *116 i sumed to have known all persons residing within the county who claimed entries therein, the object of the law in requiring notice to be given to the surveyor of the appointment of agents in his county, would certainly not be attained.
The law having required the owners of entries generally, to appoint agents and give notice thereof to the surveyor of the county, it would seem that a person who had failed to comply with its express requisition, must bring himself clearly within the spirit and policy of the act, to save his entry from forfeiture for surely the position is incontestable, that the express letter of a statute ought never to be departed from, by the adoption of a construction which in its consequences would defeat the leading object of the law, and lead evidently to the evasion of legislative intention.
The object of the law in requiring the appointment of agents, and notice to surveyors, was for the obvious purpose of expediting the execution of surveys upon all entries within a reasonable and convenient time. Now to effect this end the owners of entries were required to appoint agents in the county and give notice thereof to the surveyor, whose duty it was to proceed as directed by the law, as soon as circumstances and time would permit, to survey the entries.
But to require a person to appoint an agent, who was present himself, ready to perform the requisitions of the act, might be deemed a sacrifice of the spirit, to the letter of the law. Here the inquiry arises, whether Mas-terson, the then owner of this entry, who it is admitted had not complied with the express provision of the act, shews from his situation, that the intention and policy of the law would, notwithstanding, have been preserved and advanced, as if its express requisition had been complied with?
It is believed not difficult to perceive that the construction contended for would render the law a perfect dead letter, instead of preserving its meaning. As for example, the surveyor of Fayette county could not Survey this entry under the direction of the law, because he was not authorised to proceed under it until after the first of January 1787. At that time the land lay in Bourbon county; and the surveyor of Bourbon could not give notice pursuant to the act and proceed in virtue thereof, because no agent had been appointed in his county, nor *117 did the owner of the entry reside therein. To save this entry, the letter of the act is first to be departed from, and reliance placed on its spirit; and then the ob vious meaning of the act, in having entries surveyed within a given time, or otherwise to become void, must be disregarded, to save it by construction.
The owner of an entry was required to appoint an agenton or before the first day of January 1787, and to give notice of such appointment “ within one month thereafter.” If the one month shall be understood as relating to the first day of January, it will result as perfectly clear, that á residence within the county, to be good, must have been at the time notice would have been necessary of such agency therein. Indeed the better construction would seem to be, that although actual notice of agency in the county might have been given before the surveyor was authorised to act under it, that notwithstanding constructive notice arising from residence merely, couldbe said to attach only after he was authorised to act in conformity to that law.
But the law could have had no object in requiring notice to have been given to the surveyor of the appointment of an agent for a year or more before the survey- or was to proceed to act under that notice, as if the owner of an entry found it convenient to appoint an agent that long before the first of January 1787, or had had an agent of general power in the county long anterior thereto. But the object in limiting the time of giving notice thereof to the surveyor after ne was authorised to act under such notice, is obvious: for without such restriction the law might have been evaded. Though having given to the first of January to appoint the agent, and then a month to give notice, shews that all might have availed themselves of the provision of that period. But why, where an agent had been appointed a year before, another six months before, and a third on the first day of January 1787, and all notified to the survey- or on the same day, should be considered as differently situated within the meaning of the law, would be difficult to conceive.
Now if it were not incumbent on the surveyor of a county to recognize the situation of claimants of entries, until after the first day of January 1787, then it is not pretended that the entry under consideration was saved from forfeiture : but it remained as entries⅛general, *118 which might have been surveyed at any time before the first day of October 1798, and not afterwards.
The decree of the coui't below must therefore be reversed with costs.
The following petition for a rehearing, was presented by Hughes, Talbot, Hardin and Bibb.
To THE HONORABLE THE jüDOES OF THE CotIRT OF Appeals.
In the case lately decided on the appeal of Badger and others vs. William Chiles, the counsel for Chiles suggest (with great deference) that the decision of this court, in reversing the decree of the court below, ought to be revised and corrected : and to that end the undersigned most respectfully moves this Ills petition for a new hearing.
The entry of Masterson, made in 1783, in Fayette county, is declared void, because it was not surveyed until 1809, although Masterson, at the time of making his entry, and until 1795, resided in Fayette. It is supposed by the decree of this court that the act of the legislature in forming a new county out of Fayette, in May 1786, required of Masterson the appointment of an agent in Bourbon county, and a signification of such agency to the surveyor of Bourbon, to save his entry from a forfeiture denounced by the act of 1785.
The first point in the opinion delivei*ed, to which the counsel most respectfully solicit the attention of the court, is that wherein the adjudication of this court formerly made in the case of Sympson vs. the Register of the Land Office, is shaken, if not overruled. In that case, (Pr. Dec. p. 260) it is declared, “ as to all entries whose owners resided in the counties where the lands lay, when the ad of 1785 was passed, their entries have not and cannot become void otherwise than by failing to attend the surveyor, as required by the acts of 1779 and 1785.”
Masterson’s entry, upon the facts proved and acknowledged in the decree, is saved from forfeiture according to the rule above declared: for Masterson resided in Fayette county, within which his land lay, at the passage of the act of 1785, and long afterwards ; and there is no pretence that the surveyor ever gave him notice, personally or by publication, of any túne to attend to make the *119 survey, or that Masterson failed to attend the surveyor. The rule declared in Sympson vs. the Register was made the ground work of subsequent decisions, particularly in the cases of Jones vs. the Register, Kelly vs. the Register, and Craig vs. the Register; reports of which, faithfully extracted from the records of this court and the files of the register of the land office, are herewith submitted.(a) Since the decision in Sympson vs. the Register, in 1803, and the cases of Craig, Jones and Kelly, in 1804 and 1805, to the time of pronouncing the present decree, the rules established by those decisions have governed the register of the land office : numbers of surveys have been received and registered, and grants issued thereon; those rules have gone forth as the settled rules of property ; contracts have been made, parties have advanced their monies, and expended their time, labor and attention, on faith of those rules thus adjudged, re-adjudged and confirmed in the highest judicial tribunal of the state ; and the appellee in particular has purchased and prosecuted his claim on faith of those decisions. It is most earnestly urged for your consideration whether a rule so established and practised upon for so many years, ought now to be changed and subverted by the same tribunal, although composed of different members. Anac-quiesencein formerdecisions, although not deemed strictly correct upon legal principles, has been manifested by the court where the principles of those decisions had become the rules of contract, and especially in cases where those decisions did not involve constitutional questions. On this head the cases of Smallwood vs. Woods, (vol. 1, 542) and Willmott vs. Patton, (vol. 2, 280) are respectfully presented to the consideration. of the court. The efflux and reflux of rules of property in any country, always has been, and must always be considered as a national evil. An instability in the rules of landed property is lamentable ! When this instability is produced by a difference of judicial construction upon the same legislative act, the evil strikes deep. The change of one rule of property so made, without manifest reason and palpable cause to justify it, produces an, alarm which extends beyond the particular example ; fear and distrust spreads from man to manlike a pestilence, tilt the security desired is expected and madly sought in a revisal of the constitution.
*120 It cannot be said that the rule declared in the cuse ,<⅞’"⅛'½'0⅞ vs. the Register, as applicable particularly to this case, was not called for in the cases of Craig, Janes and Kelli;, by the facts presented for adjudication. In Craig’s case the affidavit shewed that he did not reside in Woodford, after the division ofthat county in'] 7S2. Unless his residence at the passage of the act of 1785 exempted his case from its provisions respecting the appointment of an agent, the subsequent acts continuing the time up to 1796 to comply with the provisions of the act of 1785, required of Craig to appoint an agent in Woodford after September 1792.
In Jones’s case, his residence, at the passage of the act of 1785, in the county where the entry was made, is evidently the cause of exemption from the op eration of that act | for the affidavit did not pretend he had ever lived in Harrison county, or appointed an agent there. The same may be said of Kelly’s case. The affidavit-confined his residence to Fayette until 1788-9, and stated his removal to Montgomery in January 1797, after the latest period allowed by the successive acts for complying with the requisitions of the act of 1785. In all these cases the register certified, as cause for refusal to register the surveys, tice late period at which those surveys were executed. The cause alleged for his refusal, and the facts alleged for compelling him to register, brought the excuse of residence at the passage of the act of 1785, directly before the court, and that residence was adjudged a saving from the operation of the act. If residence in the county where the location was at the passage of the act of 1785, was not an exemption from its requisitions as to the appointment of agents, then eve~, ry subsequent act for prolonging the time for appointing agents up to the lstof January 1796, was a new requisition to appoint agents in the new counties successively made in the interim between 1785 and 1796 ; and Craig, Jones and Kelly were severally as imperiously called to appoint r gents in the new counties within which their lands had been included, as Masterson was called to appoint an agent in Bourbon.
The second proposition in the opinion delivered, to which the revising attention of the court is solicited, is tl at wherein it is supposed that Masterson’s case was within the sense and meaning of the act of 1785. Upon *121 this postulate the, authority of the case of Sympson vs. the Register, (ánd by consequence the authority of the other cases since that time) has been first questioned in the opinion, and then set at nought in the decree rendered. Those cases thus Overruled (the counsel for the up* pellee would humbly insist, with due respect for the court) were bottomed upon á sound and rational construction of the áct of 1785. That act* in the first part of the 3d section, (Sess. Acts p. 31) directs the survey*. or to proceed td execute surveys, and defines the duties of the surveyor as to the surveys, and notices of the time, appointed for those surveys, by reference to the entries to be by him. surveyed; the subsequent part of the same section requires the appointment of agents on behalf of th® owners of entries, for the purpose qf enabling the s«r* veyor to perform the duties required of him. . Therefore entries which the surveyor was not required to survey in manner and time mentioned in the act, were not included in the subsequent requisition for the appointment of: agents. The action upon the surveyor in requiring him. to give notice of the time of executing surveys, corresponded with and produced the reaction upon the owners of those entries to appoint agents. The reaction upon the owners of entries to appoint agents could not be greater than the action upon the surveyor in relation to the number of entries. In’ other words, the number of entries so to be surveyed counted the number of notices to be given by the surveyor* and the notices to he given, tallied the owners who were to appoint agents or attend, in person. This rule of “ construing one part of a sta* tute by another part of the same statute,” .is laid down, by Coke in his Commentary on Lyttleton, sec, 728, (foL 381) adding that “it is the most natural and genuine exposition — for that best expresseth the meaning of the makers.” The examples there given are also worthy of consideration. Masterson’s entry was not one of those which the surveyor of Bourbon was required to proceed upon by giving notice under the act of 1785, as* I shall proceed to demonstrate : and if the entry was not, in the predicament of that act as relating to the survey* q»> Masterson was not bouild to appoint an agent, in Bpurbon.
The principal surv eyor of every county was required by the act of 1785, “to give notice to all persons claiming land bu entry within his county, or to their agents,” *122 &c. Masterson’s entry was in Fayette. To include his entry within the duties assigned to the surveyor of Bourbon, it is necessary tojnake the words of that sentence mean the same things as if the words “ by entry”1 Were omitted, and to read thus, “ cláitning land within his county .” This elision cannot be indulged — 1st, Because “ by entry” are operative words, and ought to liave their force; 2dly, by discarding them, the tense would be changed ; 3dly, by rendering them inoperative the duties imposed upon the surveyor would be unreasonable and impracticable. 1st. The preamble of the act, the second section, and the other words in the third section, (which contains the Woi’dS now under consideration) render it very clear that unsurveyed lands were the subjects of that enaction, and the words “ by entry” are not necessary there to designate lands unsurveyed; and to apply them in that sense, would be to make them tautologous and inoperative. They were used to designate the entries which were of record in the county and in possession of the surveyor, in contradistinction to entries made elsewhere and not in his possession. The preamble of the act recites that the time limited by the former act was found too short “ for the owners of entries to cany the same into actual survey $” the second section repeals that part of the former act, and the third section now under consideration provides a substitute for the repealed act. That it was not intended to require resurveys, or surveys of patented lands, or survey^ of entries already surveyed, was manifest by the previous and subsequent words of this act, and the words “ by entry” were not used in contradistinction to claims by survey or patent. If these Words had been omitted, no doubt could have arisen whether the surveyor was required or not to resurvey lands already surveyed. 2d. Discard these words, and the distinction between entries which the surveyor had in his office, and entries which he had not, but which were in possession of the survey- or of Fayette, is taken out and abolished from the sentence. This distinction was a necessary and sensible one : because there was then Ho provision by law for transferring the entries made in old counties to the custody of the surveyors of the new counties. The laW creating Bourbon county made no provision on this sub-ect. The law, therefore, not having provided the surveyor of Bourbon with the entries made in the old conn *123 ty, the distinction created by operation of the words “ by entry within hisrounty,” was proper, and related to a state of facts not only existing in contemplation of law, but really and actually. This exposition is sanctioned by the acts of 1786 and 1788, giving farther time to comply with the requisitions of the act of 17.85. Those acts recite (and particularly that of 1788) tliat the act of 1785 “ directed that owners of entries should appoint agents or attornies in each county where such entries were made,” not in the counties where the lands lie. This is a legislative declaration of the sense in which the legislature used those words in the act of 1785, 3d. To deprive these words of their operation would make the duties of the surveyor unreasonable and impracticable. The surveyor of Bourbon not being provided with the entries made in Fayette, although for lands lying in Bourbon, he could not arrange the order for surveying such entries, nor appoint a time for surveying, nor describe them in any notice to be given personally or by publication to the owner or his agent. Moreover the surveyor was required, when an entry was thus become forfeited, (for not attending the surveyor at the appointed time) “ to return the warrant upon which such entry was made to the person owning the same,” which might be relocated, &c. The surveyor of Bourbon not having possession of the warrants upon which entries had been made in Fayette, could not have complied with this part of his duty, as to entries made in Fayette. But as to all 44 entries within his county,” he could have complied. The construction contended for by the counsel of the appellee, imposes no unreasonable nor impracticable duty on the surveyor: “it gives effect to every word — it rejects none — all the parts of the statute agree together, and leave no discordance between the several parts — it is making an exposition ex viscerilms actus.” — fVide for these rules, Shep. Touch, p. 87 — Plow. 161 — Coke Lyt. sec. 728, fol. 381 — Nichols vs. Wells, Pr, Dec. 305-6.
To reject the words of the statute for the purpose of enlarging its operation, and inflicting the penalty of forfeiture by intendment, would also be violating another fule of construction — 44 Statutes inflicting penalties or forfeitures are to be construed strictly.” It is not the province of a court of law, much less of a court of equity, to create penalties and forfeitures by construction or *124 intendment. If the entries in old counties fair lands within the new counties formed out of them, are cases omitted in the laws of forfeiture enacted by the legislature, it is not the province of the judiciary (according to rules and precedents heretofore established) to supply the legislative omission. It follows, therefore, that ^voiding a violation of the aforegoing rules of construction, as well as the unreasonable and impracticable dui ties which by such vidlation would be imposed upon the surveyor of Bourbop, Masterson’s entry was not put within the sphere of action prescribed to the surveyor of Bourbon by the act of 1785. If that entry was not with-, in the sphere of duty prescribed to the surveyor of Bourbon, Masterson was not bound to appoint an agent in Bourbon, because such an appointment and notification thereof to the surveyor would be the doing of a vain and useless act — “ Lex neminem cogit ad vana seu inuti-, lia per agenda.’’' — 5 Coke 21.
The same rules of expounding a statute by taking all its parts together, and making them stand the one with the other without discord, and without rejecting words where they can have a sensible operation, will shew that it was never intended by the act of 1785 to compel the owner of an entry to appoint an agent although he was himself resident in the county wherehis entry was. The -same section, defining the duties of the surveyor, deT clared that he should give notice “ to all persons claiming,” &c. “ or to their agents or attornies,” &c. Now if all owners of entries were required to appoint agents, the direction to give notice to the persons, “ or to their at-tornies,” in the alternative, would have been useless; it should have required notice to the attorney or agent of all persons claiming lands. The putting the notice to the attorney in alternative, shews the intention of the legislature not to compel all persons to appoint attornies or agents. To require persons to appoint attornies, notwithstanding they were present and residing in the county, where the business was to be transacted, could consist only with a despotic exercise of physical power, in opposition to natural right and moral justice. Therefore such a construction ought not to be indulged. The Jine of separation between those who were, and those Who were not required to appoint attornies, has been firawn by reference to the residence of the person within qp without the county in which the lands lay pi the pa$i *125 sags of the act of 1785, and within which the surveyor was required to act. This distinction is rendered easy, by reference to the act of 1779, which should betaken in connection with the act of 1785, in pari materia. The persons who by the act of 1785 were required and expected to appoint agents, were those persons, “ not being inhabitants of his county,” to whom the surveyor, at the time of making the entry, was bound by the act sf 1779 to have given “ notice in writing” of the time appointed by him for surveying the land. Against such persons the surveyor could not proceed under the act of 1779, by giving personal notice or by publication at the door of the court-house, unless at the time of such publication or notice they were resident in the county. But against all persons resident in the county, the surveyor had power under the act of 1779 to proceed (by notice given personally or by publication of the time appointed for executing surveys on the entries) to forfeiture, for not attending at the time appointed. The persons not resident in the county, to whom the surveyors had not given notice at the making of their entries, and against whom he could not proceed under the act of 1779, w ere those intended to be reached by the act of 1785, in the requisition to appoint agents. This construction reaches the defect in the law of 1779, and is more consistent with a moral exercise of the powers of an intelligent legislature.
Whether the surveyor could or could not know all persons residing in his county, would depend in some degree upon the powers of his mind and the retentiveness of his memory, and in some measure upon the number of persons in the county and the intercourse between them and the officer. The settlements were thinly populated in those days, and intercourse between the people and the officer was great and frequent. If the surveyor did not know all owners of entries residing in his county, he was authorised to proceed by publication at the door of the court-house — -the forfeiture declared by such proceeding against one not residing in his county, being liable to be set aside for that caiise. So the law •had stood from the time of constituting the land office^ and whether the supposition of Ihw, that the surveyor might know all the owners of entries who were resident in his county, was wise or unwise, (it is humbly suggested) the construction of the act of 1785 ought to be upon *126 the law. as it stood in relation to that subject, and not according to what it might or should have been.
The next part of the opinion delivered to which the revising care of the- court is respectfully solicited, is that wherein it is said “ that a residence in the county, to be good, must have been at the time notice would have been necessary of agency thereinand having assumed the position, that residence in the county is to opé-rate as a constructive notice of agency, the time for such “ constructive notice arising from l’esidence merely,” is by the opinion and the decree limited, under the act of 1785, to one month after the first of January 1787. The counsel most respectfully suggest, that by a fair construction of the act of 1785, any person required to appoint an agent might forthwith have done so, and made it known to the surveyor. The act declares that “ on or before the said first day of January, the owners of entries” shall appoint some person within the county as their agent or attorney, “ who shall give notice of such appointment to the surveyor within one month thereafter.” The “ one month thereafter” relates to the appointment : ad proximum antecedents fiat relatio, nisi im-pediatur sententia — Noy’s Max. p. 4. The relative refers to the next antecedent, unless the sentence or sense is thereby obstructed. If the appointment of an agent was made on the 2d of January 1786, the notice to the surveyor was to be given one month thereafter. If the party was disappointed in one effort to appoint and make known his agent to the surveyor, be might repeat it as often as necessary to save his entry from forfeiture, so that the last was by an appointment not later than the first of January 1787. The object of the law was to give from its passage in 1785, the whole time until the first of January 1787, to comply with its provisions : not merely to appoint, but to appoint and make it known to the surveyor. But it was necessary to limit some period after appointment within which the surveyor was to be informed of it: for if he was never informed, he could not proceed. In the limitation by reference to the appointment, the convenience and safety of the owners of entries were consulted. They might appoint the agent and make it known to the surveyor on the same day. It would not comport with the views oft the legislature, in repealing the former act, because the time was too short and the “ mode inconvenient,” to limit all per *127 sons to one little month for performing an act, a mishap or disappointment in which was to incur so severe a penalty. An inhabitant of a distant county, or of another state, (it is respectfully suggested) might have appointed his agent and made such appointment known to the surveyor before the first day of May 1786, and returned to his home in confidence that his entry could not be forfeited, unless the surveyor appointed a time for executing the survey and published it, or made it known to his agent personally. If a nonresident might so have given notice, the residence of Masterson in the county of Fayette, before May 1786, ought to have the same force and effect to bar a forfeiture, even considering such residence asa“ constructive notice.”
Finally, it is respectfully urged that residence in the county where the entry was at the passage of the act of 1785, Was an exemption from its requisition as to the appointment of agents : that the act did not require the surveyor of Bourbon to proceed (under it) on Master-son’s entry in Fayette, because the surveyor of Bourbon had neither the entry nor the warrant, and therefore could not proceed in manner required by the act — such entry was not within the duties prescribed to him by the act of 1785 : that the surveyor of Bourbon not being called on to give notice of surveying Masterson’s entry, Masterson was not required to appoint an agent in Bourbon : that the acts of 1779 and 1785 being in pari ma-teria taken together, residents were not called upon nor intended to be required to appoint agents, as decided in the cases of Sympson, Craig, Jones and Kelly: that principles of decision so fully established, and made the ground work ofisuccessive decisions, the rule of conduct in the register’s office for so many years, and the rule of contracts and of property, “ ought to be regarded by this court as rules to be observed with as much strictness as positive law.” « An exercise of the powers of this court in any other manner than With a proper adherence to rules so fully established, must prove mischievous to individual^ and alarming to the state.”
Wherefore a rehearing is most respectfully asked.
. A reargument was accordingly granted, and the cause was argued by Bibb and Hardin for Chiles, and by Pope and Wickliff for Badger, and thereupon the opinion of the court as before given was affirmed.

 1 Bibb 310, 311 - Kennedy vs. Bruce, 2 Bibb 371